1  Paul Q. Goyette (SBN 137250)
   Janelle F. Crandell (SBN 224994)
2  **GOYETTE, RUANO & THOMPSON, INC.**
   **A Professional Law Corporation**
3  2366 Gold Meadow Way, Suite 200
   Gold River, CA  95670
4  Ph: (916) 851-1900
   Fax: (916) 851-1995
5  Email:  Paul@grtlaw.com

6

7  Attorneys for Defendant,
   AMANDA CARMELLA THEODOSY, a/k/a AMANDA CAMELLA NASH

8

9                      **UNITED STATES DISTRICT COURT**

10                    **NORTHERN DISTRICT OF CALIFORNIA**

11                            **OAKLAND DIVISION**

12

13   UNITED STATES OF AMERICA,           | Case No. 23-CR-00264-JSW

14              Plaintiff,

15        v.                             | **DEFENDANT AMANDA**
                                           **CARMELLA THEODOSY'S**
16                                         **SENTENCING MEMORANDUM;**
                                           **EXHIBITS IN SUPPORT**
17   AMANDA CARMELLA THEODOSY,
     a/k/a AMANDA CARMELLA NASH,
18                                         DATE: November 12, 2024
                Defendant.                 TIME:  1:00 PM
19                                         Before the Honorable Jeffrey S. White,
                                           Senior United States District Judge.
20

21

22

23

24

25

26

27

28

.

                                    1
         DEFENDANT THEODOSY'S SENTENCING MEMORANDUM

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ……………………………………………………….... 4

II.     THE PRESENTENCE REPORT…………………………………………...….. 4

III.    18 U.S.C. § 3553 ANALYSIS …………………………………………….... 5

        A.      Nature and Circumstances of the Offense …………………………….…..... 6

        B.      Personal History and Characteristics of Ms. Theodosy …………….…………... 7

        C.       Acceptance of Responsibility and Remorse ………………...……………... 9

        D.      The Need for Adequate Deterrence and Protection of the Public ……………....... 10

IV.     CONCLUSION……………………………………………………….... 11

# TABLE OF AUTHORITIES

**Cases**

*United States v. Booker*,
    543 U.S. 220 (2005)……………………………………………………………. 5

*United States v. Carty*,
    520 F.3d 984, 993 (9th Cir. 2008)…………………………………………… 5

*Gall v. United States,*
    552 U.S. 38 (2007)………………………………………………………….. 5

*United States v. Ruff*,
    535 F.3d 999, 1002 (9th Cir. 2008)…………………………………………… 5

*United States v. Pauley,*
    511 F.3d 468 (4th Cir. 2007)………………………………………………… 5

**Statutes**

18 U.S.C. § 3553…………………………………………………………….. 4, 5

## INTRODUCTION

The Defendant, Amanda Theodosy, by and through her counsel, respectfully submits this Sentencing Memorandum in advance of the sentencing hearing scheduled for November 12, 2024, at 1:00 pm. Counsel for Ms. Theodosy urges this Court to impose a sentence that reflects not only the nature and circumstances of the offense but also Ms. Theodosy's personal history, acceptance of responsibility, and significant potential for rehabilitation. The United States Sentencing Guidelines, while advisory, provide a fair and structured framework to ensure consistency and equity in federal sentencing.

Pursuant to the factors outlined in 18 U.S.C. § 3553(a) and in accordance with probation's sentencing recommendation, counsel for Ms. Theodosy requests a sentence of time served, supervised release for a term of three years and 100 hours of community service, which we believe is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing.

## THE PRESENTENCE REPORT

The U.S. Probation Officer calculated Ms. Theodosy's total offense level at 5 and within criminal history category I. According to the sentencing guidelines, the recommended custody time is between 0 months to 6 months. Based upon their investigation and considering the factors set forth in 18 U.S.C. § 3553(a), the U.S. Probation Officer determined the appropriate sentence to recommend for Ms. Theodosy is time served, concurrent, 3 years supervised release, 100 hours of community service and restitution. (Sentencing Recommendation, Doc. 399, Page 21)

The U.S. Probation Officer offered justification for the recommend sentence to include, Ms. Theodosy had a difficult childhood with the loss of her mother, she has no prior criminal history, has family ties and reliable employment. The probation officer balanced those factors against the seriousness of the offense and determined a non-custodial sentence is appropriate in this case. (Sentencing Recommendation, Doc 399, Page 22)

**18 U.S.C. § 3553 ANALYSIS**

Pursuant to 18 U.S.C. § 3553(a), the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed training or care.

The Guidelines, while advisory, provide a fair and structured framework to ensure consistency and equity in federal sentencing. As the Supreme Court recognized in *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines serve as the starting point and anchor for sentencing decisions. Moreover, the Ninth Circuit has emphasized in *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc), that while courts retain discretion, the recommended Guidelines range should be afforded significant weight in determining an appropriate sentence.

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court emphasized that the Guidelines are advisory and that a district judge must consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. Furthermore, courts have acknowledged the importance of considering a defendant's potential for rehabilitation and the personal challenges that may have contributed to the offense. In *United States v. Ruff*, 535 F.3d 999, 1002 (9th Cir. 2008), the Ninth Circuit held that courts must consider not only the seriousness of the offense but also the defendant's background, character, and prospects for future positive contributions to society. Similar to circumstances within our case, in *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007), the court found that the defendant's remorse, good character, and loss of his teaching certificate and state pension were mitigating factors that justified a lower sentence.

In this case, Ms. Theodosy has accepted responsibility, shown genuine remorse, lost her California POST peace officer certification, and made significant efforts toward rehabilitation. Imposing a sentence within the advisory Guideline range that exceeds time served would

1  overlook these mitigating factors and result in a punishment harsher than necessary to fulfill the

2  goals of sentencing.

3  **A. Nature and Circumstances of the Offense**

4      While Ms. Theodosy acknowledges the seriousness of the offense, it is important to

5  consider the mitigating nature and circumstances surrounding it. Ms. Theodosy explains that

6  Individual-1 first approached her in 2019, offering to complete college courses on her behalf.

7  Initially, Ms. Theodosy declined the offer. However, months later, after experiencing a loss of

8  motivation, she ultimately agreed to let Individual-1 take over the coursework. At the time, Ms.

9  Theodosy was working full-time with frequent overtime, leaving her with little personal time,

10  which contributed to her decision.

11
       Ms. Theodosy asserts that she was not involved in any form of conspiracy and had no
12
   communications with any other officer regarding this matter. Importantly, no evidence exists to
13
   suggest that Ms. Theodosy coordinated with others or acted with any collective intent to defraud
14
   the system, further underscoring her lack of culpability.
15

16
       Ms. Theodosy explains that her initial motivation was solely to earn her bachelor's degree.
17
   It was not until after completing the degree that Ms. Theodosy considered submitting her
18
   paperwork to receive tuition reimbursement and a pay increase. (Sentencing Recommendation,
19
   Doc. 399, Page 8-9, Paragraph 31) This demonstrates that Ms. Theodosy's actions were not
20
   driven by financial gain, which makes her less culpable. Since her original intent was simply to
21
   achieve a personal academic goal, the subsequent benefits—like tuition reimbursement and a pay
22
   increase—were unintended outcomes rather than motivating factors. Her lack of intent to pursue
23
   these incentives prior to earning her degree suggests there was no deliberate attempt to exploit the
24
   system for financial advantage. Ms. Theodosy's actions were isolated, uncoordinated, and lacked
25
   criminal intent.  Ms. Theodosy's conduct does not reflect a pattern of criminal behavior but rather
26
27  a momentary lapse in judgment.
28

**B. Personal History and Characteristics of Ms. Theodosy**

Ms. Theodosy is 34 years old with no prior criminal history beyond the present offense. She was raised in Concord, California, by both parents and has fond memories of spending time with her family during childhood. However, her life took a devastating turn at the age of 10 when her mother passed away after a three-year battle with lung cancer. This loss profoundly impacted Ms. Theodosy and her family. With her father now the sole provider, his responsibilities left him with little time or energy to be actively involved in household management. As a result, Ms. Theodosy found herself taking on more responsibilities at home to help maintain stability for the family. This shift required Ms. Theodosy to handle various household tasks and manage day-to-day needs that her mother might have overseen. These new responsibilities demanded much of her time and energy, often requiring her to balance household duties with her own personal and academic obligations.

Despite these challenges, Ms. Theodosy has demonstrated remarkable resilience by serving both her country and community. At 20, she enlisted in the U.S. Coast Guard Reserves, successfully completing basic training and receiving an assignment to Port Security in San Francisco. From 2013 to 2014, Ms. Theodosy was deployed to Guantanamo Bay, Cuba, and she continued her military service until her honorable discharge in September 2018. After completing her military service, Ms. Theodosy continued to serve her community as a police officer while maintaining employment and supporting her family.

Ms. Theodosy has many years of exemplary service in both the military and law enforcement, consistently receiving excellent performance reviews in each role. At no point during her career was she disciplined for any form of misconduct. Throughout her military career, Ms. Theodosy earned several decorations and awards, including the Global War on Terrorism Medal, Armed Forces Reserve Medal, Coast Guard Pistol and Rifle Expert Medals, Mobilization Device (CGR), Meritorious Team Commendation, and Good Conduct Medal. (Sentencing

Recommendation, Doc. 399, Page 14, Paragraphs 68). Throughout her law enforcement career, Ms. Theodosy earned numerous awards from the Pittsburg Police Department, including four (4) Chief's Commendations, three (3) Stolen Vehicle Awards, two (2) Complimentary Awards, a Firearm Enforcement Award and a Life Saving Award. (See Exhibit "A"). Currently, Ms. Theodosy is employed as a utility worker at PG&E. In her current role, she continues to serve her community by responding to emergencies and repairing storm-damaged overhead and underground electrical lines.

Ms. Theodosy is the mother of a three-year-old daughter. She and her husband share custody following their separation in early 2024. Her husband believes that a custodial sentence would place significant strain on their family and be especially challenging for their daughter. (Sentencing Recommendation, Doc. 399, Page 12, Paragraphs 58)

At just three years old, Ms. Theodosy's daughter is in a sensitive stage of development, where she is highly aware of her mother's presence and absence. This age is critical because, while she is perceptive enough to notice when her mother is not around, she is not yet old enough to grasp the complex reasons why.

A separation from her mother could lead to confusion, feelings of insecurity, and emotional distress, as she lacks the cognitive ability to understand concepts like separation, legal proceedings, or custodial sentences. Instead, she may interpret Ms. Theodosy's absence as abandonment or rejection, leading to potential attachment issues or behavioral changes. This confusion could also impact her sense of stability and routine, both of which are essential at this age for healthy emotional development.

A letter of support was provided by Ms. Theodosy's husband, Steven Nash. He describes Ms. Theodosy as kind and compassionate with an unwavering commitment to helping others. Mr. Nash is aware of Ms. Theodosy's conviction and the facts of the incident. He believes this situation does not reflect the essence of who she is. Mr. Nash states how himself and Ms.

1   Theodosy's family placed pressure on her to finish her college degree so she could have options

2   outside of police work. He believes Ms. Theodosy's conduct was an extreme lapse of judgement

3   brought on by family pressure rather than any incentive for monetary gain. (See Exhibit "B",

4   Letters of Support, Letter of Steven Nash) Letters of support were also provided by Ms.

5   Theodosy's mother-in-law and close family friend. They acknowledge Ms. Theodosy made a

6   mistake in judgement when she participated in this offense. Despite the conduct, both individuals

7   attest to Ms. Theodosy's dedication and commitment to others within the community. (See

8   Exhibit "B", Letters of Support, Letter of Carmela Inneo-Nash, and Letter of Marie Lawrence)

9

10  **C. Acceptance of Responsibility and Remorse**

11          Ms. Theodosy took responsibility for her actions by pleading guilty before trial, thereby

12  conserving judicial resources. At no point did she impede or obstruct justice or hinder the

13  investigation. Additionally, Ms. Theodosy has expressed sincere remorse for the harm she caused

14  and is actively working to make amends. She deeply regrets her actions and feels ashamed of the

15  decisions she made. Ms. Theodosy acknowledges that she took an oath to uphold the law and the

16  U.S. Constitution and admits that she failed to honor that commitment. (Sentencing

17  Recommendation, Doc. 399, Page 8, Paragraph 31)

18

19          Ms. Theodosy fully understands the gravity of the situation, recognizing how her conduct

20  has affected not only her family but also the broader community. She reflects on the negative

21  impact her actions have had on her former police departments, fellow officers, and the reputation

22  of law enforcement as a whole. Her greatest regret is knowing that the cases she worked on may

23  now be dismissed or compromised, potentially hindering prosecutions. Ms. Theodosy feels the

24  deepest remorse for how this may affect victims and their families, as they might not receive the

25  justice they deserve. (Sentencing Recommendation, Doc. 399, Page 8, Paragraph 31)

26

27

28

Committed to making things right, Ms. Theodosy has maintained full-time employment, saved her income, and is prepared to pay restitution. (Sentencing Recommendation, Doc. 399, Page 9, Paragraph 31)

**D. The Need for Adequate Deterrence and Protection of the Public**

Given Ms. Theodosy's age, lack of prior criminal history, and commitment to rehabilitation, the risk of recidivism is low. Incarceration is unnecessary to deter future misconduct. Instead, alternative sentencing options—such as supervised release or community service—would effectively protect the public and uphold respect for the law. In this case, incarceration would fail to serve the intended purposes of punishment because Ms. Theodosy does not pose a danger to the community, nor is confinement required to prevent future wrongdoing.

Additionally, public safety is not implicated here, as Ms. Theodosy's conduct did not involve violence, harm to others, or behavior that endangers the well-being of the public. The nature of her offense reflects an isolated lapse in judgment rather than a deliberate or ongoing threat to society. As such, imprisonment would neither meaningfully enhance public safety nor further deter Ms. Theodosy, who has demonstrated accountability, expressed remorse, and actively pursued personal rehabilitation.

The U.S. Probation Officer recommends 100 hours of community service, emphasizing that this not only benefits the community but also aligns with the statutory goals of deterrence and rehabilitation under 18 U.S.C. § 3553(a)(2)(B) and (D). (Sentencing Recommendation, Doc. 399, Page 24) Community service provides a constructive means for Ms. Theodosy to make amends while reinforcing respect for the law through positive engagement, rather than through punitive incarceration that may prove counterproductive.

Additionally, the U.S. Probation Officer highlights that Ms. Theodosy has attended all court appearances, complied with pretrial release conditions, and poses no flight risk or danger to the community. (Sentencing Recommendation, Doc. 399, Page 23)

## IV. CONCLUSION

Given the mitigating factors in this case and the reasons set forth above, counsel for Ms. Theodosy requests the Court impose a sentence of time served, concurrent, 3 years supervised release, 100 hours of community service and restitution. Such a sentence ensures fairness, reflects Ms. Theodosy's personal circumstances, and maintains respect for the Guidelines' role in promoting consistency across federal cases.

DATED:  November 4, 2024

_____
JANELLE F. CRANDELL
Attorney for Defendant,
AMANDA THEODOSY a/k/a NASH

EXHIBIT A

**From:** Ashley Martinez <aMartinez@pittsburgca.gov>
**Date:** October 31, 2024 at 17:38:04 PDT
**To:** atheodosy2@gmail.com
**Cc:** Erik Severe <Esevere@pittsburgca.gov>
**Subject: Awards**


Good evening,

Per your request, here is a list of your awards:

| | | |
|---|---|---|
| Chief's Commendation | - | 04/25/16 |
| Chief's Commendation | - | 07/07/17 |
| Chief's Commendation | - | 07/09/17 |
| Firearm Enforcement | - | 08/17/17 |
| Stolen Vehicle Award | - | 08/17/17 |
| Complimentary Report | - | 11/03/17 |
| Complimentary Report | - | 03/15/18 |
| Stolen Vehicle Award | - | 2018 |
| Life Saving Award | - | 2018 |
| Stolen Vehicle Award | - | 2019 |
| Chief's Commendation | - | 01/06/20 |

Sorry for the delay. Let me know if you need anything else.

Best regards,



**Ashley Martinez**
Executive Assistant to the Chief of Police
Pittsburg Police Department
65 Civic Avenue
Pittsburg, CA 94565
Phone: (925) 252-4088 / Fax: (925) 252-4111

EXHIBIT B

Steven Nash

62 Outrigger Way

Discovery Bay, CA

(973) 454-2027


The Honorable Jeffrey S. White


Dear Judge White,

My name is Steven Nash, and I am writing to you in support of my spouse, Amanda Nash, who is currently facing charges in your court. I have known Amanda for over 10 years. We met July 7th, 2014, in Guantanamo Bay, Cuba when we were both stationed there during our time in the military and 4 years later August 25th, 2018, I had the privilege to marry Amanda and call her my wife.

Over the last 11 years that we've been together, through travel, sickness, unemployment, raising our first child, multiple moves and many other ups and downs I know my wife incredibly well and am proud of the person she is. She is not perfect, but I've seen her embody kindness, compassion, and an unwavering commitment to helping others. Despite the circumstances we currently face, I can say without hesitation that this situation does not reflect the essence of who she is.

Amanda is resilient, compassionate, respectful, selfless, and one of the strongest people I have ever met. All traits I pray, and hope are passed down to our 3-year-old daughter Jadyn. Unfortunately, Amanda has not had it easy, starting with the passing of her mother when she was very young and the responsibility that fell to her of having to help take care of her younger sister Ashley who is developmentally disabled. I cannot imagine a better show of her character than having to raise a disabled sibling at that age all while still learning how to raise herself. Having to sacrifice her childhood for her sister's put an incredible strain on her relationship with her father. That relationship continued to be strained until this day as he never wanted her to become a police officer and didn't see the pride she had for the position or the good she was doing in the communities she served. He was the one putting pressure on her to finish her college degree so that she could have options outside of police work. I selfishly was also putting pressure on her because after having our daughter I also wanted her to make a career change given the political and economic state of policing and the everyday dangers. Now that she has had this time away from being a police officer I truly do not know what I would do without her. She has been my rock to lean on when it comes to my professional career and even more so our daughter even

while struggling herself to find new work. I pray that everything she has been through will be considered and we will not have to restart our lives again.

This was an incredibly difficult letter for me to write because it is one, I never thought I would ever have to write especially for someone who is so responsible and in my eyes whose character is beyond reproach. I am fully aware of the charges against my wife and the challenges we face. However, I want to assure you that Amanda is not defined by this moment, but it is in fact an extreme lapse in judgement brought on by family pressure rather than any incentive for monetary gain.

In closing, I respectfully ask you to consider Amanda's character and the positive and irreplaceable impact she has on my life, our 3-year-old daughter's life, and the lives of our friends, family, and community. I stand firmly by her side and support her wholeheartedly.

"I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

I am available anytime should you need to speak with me. Thank you for your time and consideration.

Sincerely,

Steven Nash (Oct 28, 2024 14:59 PDT)

Steven Nash

**Carmela Inneo-Nash**

24 Nassau Rd, Verona, NJ 07044

Phone: 201-513-8938



Honorable Judge Jeffery S. White

Subject: Letters of Support for Amanda Theodosy Nash

Honorable Judge Jeffery S. White

 Your Honor, my name is Carmela Inneo-Nash, and I am the mother-in-law, of Amanda Theodosy Nash. The purpose of this letter is to detail my support and provide my perspective on Amanda's character in advance of her November 4th sentencing.

I have known Amanda since April of 2015, we first met in April of 2015 at Guantanamo Bay, Military Base Cuba. I was visiting my son Steven who was serving a 7-month deployment while in the Marine Corps.  This was my first introduction to Amanda. She was serving a 9-month deployment in the Coast Guard Reserves. I was very impressed with her, she was serving in the Military Police, had tons of energy and loved what she was doing.  She was proud of her military service and serving her country.

 Amanda and Steven married in August 2018 and gave us our beautiful granddaughter, Jadyn in June 2021. We live in New Jersey but visit often. My family and I love and respect Amanda and have gotten to know her and her family well over the last 9 years. She has always made us feel very welcome during our many visits to California.  Amanda is a strong, kind, thoughtful, hard-working and family oriented. She doesn't, drink, smoke or take drugs and lives a very clean life.  She is respectful of people from all diverse walks of life.  We are an inter-racial family and that quality for someone joining our family was very import.  One primary thing I learned about Amanda very early is that she never takes the easy way out and never expects anyone else to carry her responsibilities. That work ethic applies to her personal responsibility as well as her career.  Her goal was to be a Police Officer in the East Bay, she worked hard physically and mentally to become a Pittsburg Police Officer.  While working full time with Pittsburg PD, she worked part-time security at the San Francisco 49'er games and was

eventually approached by Santa Clara Police Department for a position on that Police Department. PD.

Amanda unfortunately lost her mom at a young age, and I believe felt that loss/void very deeply. That never stopped her from always doing the right thing by her family and never taking the easy way out. She has for many years helped her dad with younger sister Ashley who is developmentally disabled and most recently supported her dad who is suffering from bladder cancer. She is the family member who can be relied upon always to help. Amanda came to visit our family in NJ during the winter months several years back. Amanda is not a fan of NJ or our cold winters but would always make the trek. This one year there was a huge snowstorm, with about 4 feet of snow and our cottage at the Jersey shore lost heat and was facing frozen pipes. No questions asked, she jumped in the car with us to(literally) dig the home out of the snow and set up heaters. She was a huge help and worked without a complaint, we were grateful for her help, and it reinforced our believe that our daughter-in-law was responsible and caring women. One year during the holidays, we gave each of our children a monetary gift that was slightly larger than in the past (not huge). Sometime had gone by and I asked Amanda why she hadn't cashed the check, she replied it was way too much money and she wouldn't feel right accepting that "large sum" that is just how she is... Amanda loves children, her own and those of friends and family. Halloween two years ago, friends that were new to California were visiting with their 7-year-old daughter to go trick or treating. No one was trick or treating in the neighborhood and Amanda drove around town to find an active neighborhood for trick or treating so this child would not be disappointed, she made that little girl very happy. Above all, she is an excellent Mom and takes that responsibility very seriously. She and my son are raising a kind and thoughtful child who can recite the Pledge of Allegiance and God Bless America like a 10-year-old, and for that I am very grateful.

I understand fully the felony charges (conspiracy and wire fraud) and the serious penalties that are facing Amanda. This behavior or error in judgement are so out of character given her work ethic, integrity and consistently honest behavior in every part of her life. As a police officer Amanda worked to serve the public, that was her driver, not the college degree or bump in pay that was never the motivation from my perspective. She made a mistake, no question, but I am certain the mistake was never intended to break or violate the public trust, again she worked to serve. If I had to put my life into the hands of another human being it would be Amanda. Despite the loss of her police job, a job she loved, she worked tirelessly to find another job which given the circumstances was not easy, but she found employment. Amanda is good and kind person, a human being who would literally help anyone who needed support. She is always there for her family and friends; she is loved and respected.

Thank you, Your Honor, I am available at anytime if there are any further questions.

 "I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

Carmela Inneo-Nash
October 2nd, 2024

*Carmela Inneo-Nash*
Carmela Inneo-Nash (Oct 29, 2024 13:04 EDT)

October 13, 2024

To: Honorable Jeffrey S. White

---

Subject:  Letter of Support for Amanda Theodosy Nash

Your honor, I would like to introduce myself.  My name is Marie Lawrence. My husband and I met Amanda's mother and father, George and Carol in 1984. From the first day we met, we became part of the Theodosy family.

We've shared the family's joys and tragedies ever since 1984.  Joys being the marriage of George and Carol in 1989, the birth of their daughters, Amanda in 1990 and Ashley in 1993 plus many more happy times.

Tragedy struck in 2000 when Amanda's mother passed away at the age of forty-two from lung cancer.  Amanda was ten and Ashley was seven.  From that day forward, we assumed along with their father and family members the task of guiding the girls through life.  Our goal was to instill the values of their mother and keep her influence alive.  She was a loving, caring, righteous person who during her short time with her daughters, taught them the value of honesty, hard work and accomplishment.

We've been an active part of Amanda's life for thirty four years.  That being said, we feel we can give clarity to Amanda's character.

From a small child, she showed strength and determination to succeed in whatever she chose, i.e. school, sports, hobbies, job, military and her passion for law enforcement.

Amanda was a dedicated law enforcement officer who was committed to the communities she swore to protect.  We all know Amanda made a grave mistake in judgement  when she participated in the unlawful activities that have led to her guilty plea.  She is human.  Humans make bad choices.  However, in her lifetime, she has made more positive choices and helped so many people.  More than could ever be conveyed.

She has always been supportive of her younger, disabled sister.  Amanda's father has suffered severe health issues including heart attacks, open heart surgery and most recently bladder cancer.  The responsibility of helping her 78 year old father manage his health and family affairs have now become Amanda's.

Page 2

On a more personal note, Amanda has always looked upon the Lawrence Family as her own. Over the years, she has helped us with many unexpected events. One that comes to my mind is in July of 2022, I fell at our home. Amanda and her one year old daughter were visiting. Amanda immediately evaluated my condition and determined medical attention was necessary. She called 911 and assisted the first responders with my transport to the ambulance. Amanda stayed calm, compassionate and caring during this time which was very alarming for my eighty four year old husband.

Then, in May of 2023, Amanda showed her inner strength and ability to step up to one of the hardest tasks of her life. Amanda and our son, Jeffrey were like sister and brother. Jeffrey was a twenty six year veteran of the Pittsburg Police Department. Amanda was always interested in Jeffrey's job and he ultimately introduced her to the world of law enforcement. They worked side by side for severals years. Jeffrey was in the process of retiring from Pittsburg Police Department. On May 27, 2023, Amanda contacted us stating that she had not heard from Jeff in a few days. We were out of town for the Memorial Day holiday. Jeff was staying at our home in Discovery Bay for the holdiay. I hadn't heard from him either. We both became concerned. Amanda decided to check on Jeff. To her dismay, she found Jeff passed away in our guest room. Due to her years of training and having to handle sensitive situations, Amanda went forward and contacted the appropriate authorities. Then, proceeded in notiifying our family including Jeff's son as well as managing the scene in our absence. We often reflect on what that day would have been like for myself and my husband without Amanda in our lives.

We know Amanda will suffer many consequences due to her bad choices. She already has experienced job loss, humiliation, loss of respect by many who looked up to her and so much more.

 When you are contemplating Amanda's punishment, please recognize the good she has done for humanity. Hopefully, it will help to outweigh the negative.

Thank you. Your honor. Please feel free to reach out to me at 925-348-0580.

"I declare under penalty of perjury under the laws of the State of California that the for going is true and correct."

Marie Lawrence
51335 Pinnacle Vista Dr., Indio, CA 92201


Robert Lawrence (Oct 28, 2024 15:42 PDT)